DECISION AND JUDGMENT ENTRY
{¶ 1} Appellants appeal a summary judgment issued by the Wood County Court of Common Pleas in favor of the option holder for the purchase of real property. Because we conclude that the terms of the contract are ambiguous, requiring a factual determination of the contracting parties' intent, we reverse and remand for further proceedings. *Page 2 
 {¶ 2} Appellants, William and Antoinette Wolf, own a 28.5 acre parcel at the northwest corner of Crossroads Parkway and Deimling Road in northern Wood County. The land is near the intersection of the Ohio Turnpike and Interstate 75.
 {¶ 3} In the late 1990s, the city of Rossford annexed this property as part of an economic development project dubbed the Crossroads of America. On October 14, 1997, the entity known as the Rossford Economic Growth Corporation obtained a two-year option to buy appellants' 28.5 acres. A one-year extension of this option followed.
 {¶ 4} During this time the city made substantial road, water and sewer improvements to what had once been farm land. Appellants' property was assessed the amount of $24,000 per year for 20 years for these improvements. Eventually the Rossford Economic Growth Corporation encountered financial difficulties and allowed its option to lapse.
 {¶ 5} At some point thereafter, appellants were approached by appellee Kurt Miller, a principal in appellee Miller Diversified Holdings, LLC. Miller sought an option on the property for commercial development. Extended negotiations followed, the substance of which is in dispute.
 {¶ 6} Eventually, the parties reached an agreement memorialized in a "Real Estate Option and Purchase Agreement" effective April 6, 2004. For the sum of $10,000, Miller Diversified obtained a 30 day option to purchase the property at an agreed price, with 30 day extensions available.
 {¶ 7} In material part, the agreement provided: *Page 3 
 {¶ 8} "Section 2.1 Duration of Option. This Option shall remain in effect commencing on the Effective Date and continue until the time that is 30 days after the Effective Date ("Initial Option Period"). The Initial Option Period may be extended pursuant to section 2.2 until the earliest to occur of: (i) purchase of the Parcel by Buyer, or (ii) termination of this Agreement by Buyer in writing, or (iii) expiration of the Option Period as may be extended under section 2.2 ("OptionPeriod").
 {¶ 9} "Section 2.2 Option Extensions. Buyer may elect to extend the Option Period for an [sic] additional successive One (1) month periods by Buyer paying to Seller on or before the first business day of each successive month the sum of $1000 ("Additional Extensions"). Each payment shall become part of the Earnest Deposit; however, the Additional Extensions shall be non-refundable, except for breach of this agreement by Seller."
 {¶ 10} The option contract also contained a confidentiality clause and the following provision with respect to recording of the transaction:
 {¶ 11} "Section 12. Recording. This Agreement shall not be recorded with any Government agency. Buyer may, at its discretion, cause a short form memorandum or Affidavit of Title relating to this Agreement (in form satisfactory to Buyer) to be recorded with the Wood County Recorder evidencing Buyer's rights hereunder. At Buyer's request, Seller will cause such documents as may be reasonably required to be recorded with the Wood County Ohio Recorder to evidence title to the Parcel as to be as represented herein and proper authority of the persons acting on behalf of Seller. * * *" *Page 4 
 {¶ 12} In February 2005, appellees sent to appellants a memorandum of option to purchase and requested that appellants execute the memorandum for recording. The parties agree that appellees also requested appellants to fill in a date on the pre-typed form. In its final form, the relevant portion of the memorandum states:
 {¶ 13} "Pursuant to the terms and conditions of the Agreement, which Buyer and Seller agree remains in full force and effect and which is herein incorporated by reference, Buyer has the option, at any time on or before December 31, 2005, to purchase from Seller real property consisting of approximately 28.5 acres, located on the Northwest corner of Crossroads Blvd. and Deimling Rd., Rossford, Wood County, OH * * *." (Emphasis added.)
 {¶ 14} The parties agree that after appellant William Wolf filled in the date "December 31, 2005" on the memorandum, he returned it to appellees, who executed and recorded the document.
 {¶ 15} In December 2005, appellants refused to accept any further extension payments from appellees, maintaining that the option expired on December 31. On October 31, 2006, appellants brought the suit that underlies this appeal. Appellants sought a declaration that appellees' option expired December 31, 2005, and other relief. Appellees answered and filed a counterclaim seeking a declaration that the option contract was valid and in force.
 {¶ 16} Following discovery, appellants moved for partial summary judgment on the expiration of the option. Appellees filed a memorandum in opposition and interposed *Page 5 
their own motion for summary judgment on the counterclaim. On July 23, 2007, the trial court, without explanation of its reasoning, denied appellants' motion and granted appellees' cross motion, declaring the option valid and in force. From this judgment, appellants now bring this appeal, setting forth the following two assignments of error:
 {¶ 17} "I. The Trial Court erred by denying the Motion for Partial Summary Judgment of Plaintiffs Wolf.
 {¶ 18} "II. The Trial Court erred by awarding summary judgment to Defendants Miller."
 {¶ 19} Appellate review of a summary judgment is de novo, employing the same standard as the trial court for granting such a motion.Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. The motion may be granted only when it is demonstrated:
 {¶ 20} "* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 67, Civ.R. 56(C).
 {¶ 21} A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel,Inc. (1999), *Page 6 135 Ohio App.3d 301, 304; Needham v. Provident Bank (1996), 110 Ohio App.3d 817,826, citing Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248.
 {¶ 22} An option contract for the purchase of property is an agreement wherein the owner grants another person the privilege, without the obligation, to purchase real property at a set price, within a set time.Loeffler v. Crosser (June 11, 1999), 6th Dist. No. OT-98-034, citing Curry Durham, Ohio Real Property Law and Practice (5 Ed.1996) 4, § 1-1(e). As with other contracts, the construction of a written contract is a matter of law. Long Beach Assn., Inc. v. Jones,82 Ohio St.3d 574, 576, 1998 Ohio 186.
 {¶ 23} The purpose of judicial examination of any written instrument is to ascertain and give effect to the intention of the parties.Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51,53. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kelly v. Med. LifeIns. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. Consequently, when the terms of a written contract are unambiguous, the court must give effect to the expressed intentions of the parties.Aultman Hosp. Assn., supra.
 {¶ 24} The language of a contract is "ambiguous" when its meaning cannot be derived from the four corners of the document or where the rights and duties imposed on the parties are reasonably subject to conflicting interpretations. United States Fid. Guar. Co. v. St.Elizabeth Med. Ctr. (1998), 129 Ohio App.3d 45, 55; Matthews v. MorrisSons Co. (1997), 118 Ohio App.3d 345, 349. Where ambiguity exists, the interpretation *Page 7 
of the parties' intent constitutes a question of fact, Center RidgeGanley, Inc. v. Stinn (1987), 31 Ohio St.3d 310, 314, ordinarily precluding summary judgment. Civ.R. 56 (C).
 {¶ 25} In this matter, the parties devote substantial time and energy arguing about the intent of the option contract. Appellant Bill Wolf, supported by the deposition testimony of his attorney, insists that appellee Kurt Miller told them that a monthly extension was more desirable because he expected to have a deal on the land within eight to ten months. Thus, according to appellant Bill Wolf, when appellees asked him to insert an end date into the memorandum, he believed December 31, 2005, was a generous extension of what had been promised.
 {¶ 26} Appellee Kurt Miller denies that any such promise was made and insists that it is only common sense that marketing commercial property can consume much time. That is why he insists his intent was to have the option renewable, essentially, in perpetuity.
 {¶ 27} Appellant Bill Wolf responds, questioning rhetorically why he would agree to extend the option indefinitely for $12,000 a year when he was paying $24,000 per year in special assessments. Moreover, he points out, the option extension money is deducted from the purchase price, so this makes even less economic sense.
 {¶ 28} None of this is material to the matter before us. If we must resort to extrinsic evidence to determine the intent of this contract, this matter is not conducive to summary judgment and the judgment of the trial court must be reversed. See, United States Fid. Guar., supra, 55-56. *Page 8 
 {¶ 29} Although the principal option contract does not expressly state that extensions may be had forever, the document contains no set time when such extensions may no longer be had. Thus, absent something in the law which would operate to prevent such perpetual extensions (appellants mention both the rule against perpetuities and the doctrine against restraint of alienation,) the original agreement provides for extensions to continue so long as the option holder continues to make monthly payments.
 {¶ 30} This does not, however, take into consideration the effect of the later memorandum of option. The memorandum clearly states that the "Buyer has the option, at any time on or before December 31, 2005, to purchase [the] real property * * *." Appellees argue that this language refers to the "option" itself, not the "extensions" of the option. Since what is at issue is the extensions rather than the option, appellees find no relevance in the memorandum. Alternatively, appellees argue that the memorandum cannot be held to have force because there was no separate consideration for it.
 {¶ 31} The consideration question may be examined in two ways, neither of them advantageous to appellees. Since the memorandum and the option cross reference each other, it could be determined that the memorandum was nothing more than an extension of the original option contract and encompassed under the consideration for the principal document. On its face, the memorandum does not contradict the terms of the original option contract. It merely clarifies what might be reasonably construed as an inadvertently omitted term: the end date. *Page 9 
 {¶ 32} Alternatively, it was appellees who requested that appellants execute the memorandum, so presumably appellees derived something of value from the transaction. This would be sufficient consideration to support the memorandum as a second contract, if it is deemed a modification. Jones v. Seven Hills Farms, Inc. (Oct. 30, 1991), 4th Dist. No. 1977, citing Phelps v. Logan Natural Gas Fuel Co. (1920),101 Ohio St. 144, 148.
 {¶ 33} With respect to appellees' argument that the memorandum references options rather than extensions, this is a fine parse, but it is not necessarily unreasonable. Thus, we must conclude that, reading the option contract and the memorandum in pari materia, we cannot determine the intent of the parties from the four corners of the document. The agreement is, therefore, ambiguous.
 {¶ 34} As a result, a material question of fact exists as to the intent of the parties concerning the end date of this option contract, precluding summary judgment. Accordingly, appellants' second assignment of error is found well-taken. Their first assignment of error is not sustained.
 {¶ 35} On consideration where of the judgment of the Wood County Court of Common Pleas is reversed. This matter is remanded to said court for further proceedings consistent with this decision. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
 JUDGMENT REVERSED. *Page 10 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
 Peter M. Handwork, Mark L. Pietrykowski, Arlene Singer, J., CONCUR. *Page 1