[Cite as *Hayes v. Mingo Properties, L.L.P.*, 2025-Ohio-378.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

KEVIN HAYES,                                          :

    Plaintiff-Appellant,            :

    v.                                              :

MINGO PROPERTIES LLP, ET AL.,       :

    Defendants-Appellees.         :

No. 113795

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 6, 2025

---

Civil Appeal from the Cuyahoga County Common Pleas Court
Case No. CV-23-980442

---

***Appearances:***

Bolek Besser Glesius LLC and Kelly A. Rochotte, *for appellant*.

Hobson Rasnick Fox & Kolligian LLC, Dylan S. Statler, and Steven R. Hobson, II, *for appellees*.

---

KATHLEEN ANN KEOUGH, P.J.:

**{¶ 1}** Plaintiff-appellant, Kevin Hayes, appeals from the trial court's judgment entry dismissing his complaint against defendants-appellees, Gregory and Cami Goucher (collectively "the Gouchers"). For the reasons that follow, we affirm.

## I. Procedural History and Factual Background

### A. Complaint for Breach of Contract

**{¶ 2}** In June 2023, Hayes filed a complaint against Mingo Properties, LLP ("the Partnership") and Mingo Properties, LLC ("Mingo LLC") (collectively referred to as the "Mingo Defendants") and the Gouchers asserting a breach-of-contract claim regarding a commercial triple-net lease agreement. The complaint alleged that the Gouchers were each co-owners of Mingo LLC, and partners of the Partnership. The complaint further alleged that the Partnership entered into a lease agreement with Hayes, as owner, for the tenancy of certain property in South Euclid, Ohio, that required the Partnership to pay the rent, utilities, insurance, and property taxes.[1] Pursuant to the lease, the Partnership could sublet the premises. Hayes attached a copy of the lease agreement, which was incorporated by reference, to the complaint.

**{¶ 3}** The complaint alleged that the Partnership breached the agreement by failing to pay Hayes rent and the taxes. Additionally, Hayes alleged that the Partnership failed to pay the utilities, causing them to be shut off, causing Hayes to incur restoration fees for the electricity, gas, and water. Hayes attached copies of the unpaid utility bills to the complaint.

---

[1] The complaint noted that the lease agreement inadvertently identifies Mingo LLC as the lessee. For ease of understanding, we will identify the lessee as the Partnership.

{¶ 4} The complaint further alleged that in January 2023, Gregory Goucher notified Hayes of his intent to sell the property, which according to Hayes, Goucher lacked legal authority to sell the property. Hayes attached to his complaint the letter he sent to the Partnership, notifying Gregory of the alleged breach of the lease agreement and demanding immediate payment. According to the complaint, Hayes's counsel subsequently sent Gregory correspondence, a copy of which was also attached to the complaint. The correspondence, addressed to the Partnership, (1) advised Gregory of the purported breach, (2) alleged that any attempt to sell the property constituted "fraud," (3) demanded payment, and (4) notified him that because "Mingo Properties is incorporated as a partnership, [Hayes would] be seeking damages against both the business and you and all partners in your individual capacities."

{¶ 5} As for damages, the complaint requested a "judgment against Defendants for unpaid rent, utilities, and late fees pursuant to the terms of the parties' lease and for other damages to the Premises as may be determined at such time as [Hayes] recovers possession of the Premises."

**B. Hayes Obtains a Default Judgment against Mingo**

{¶ 6} On July 20, 2023, Hayes moved for default judgment against Mingo LLC and the Partnership. He alleged that both entities failed to respond after being properly served with the complaint. Accordingly, Hayes demanded judgment

against Mingo LLC and the Partnership on the breach-of-contract claim and requested damages in excess of $58,000.

{¶ 7} On September 13, 2023, the trial court entered a default judgment against Mingo LLC and the Partnership in the amount of $58,693.54, plus costs. The case remained pending against the Gouchers.

### C. Hayes Moves for Default Judgment Against Gregory Goucher

{¶ 8} On October 31, 2023, Hayes moved for default judgment against Gregory Goucher, contending that Gregory failed to file a responsive pleading despite purportedly being served with the complaint on September 20, 2023. In his motion, he contended that Gregory breached the lease agreement, and thus a default judgment should be rendered against Gregory pursuant to his "joint and several liability." The motion requested damages in excess of $58,000 — the same amount Hayes demanded and received as a judgment against the Mingo Defendants.

### D. The Trial Court Grants the Gouchers' Motion for Dismissal

{¶ 9} The Gouchers obtained counsel in December 2023 and subsequently moved to dismiss Hayes's complaint pursuant to Civ.R. 12(B)(6) for failure to state a claim against the Gouchers upon which relief could be granted.[2] Relevant to the appeal, the Gouchers contended that Hayes's breach-of-contract complaint failed to state a claim against them because they are neither parties to the Lease Agreement,

---

[2] Gregory Goucher, individually, also moved to dismiss Hayes's complaint pursuant to Civ.R. 12(B)(6).

nor does the Lease Agreement provide that either of them personally guaranteed any of the obligations of the Mingo Defendants. Therefore, relying on R.C. 1776.36, they maintained that they cannot be personally liable for any alleged breach of the Lease Agreement by the Partnership. Insofar as Hayes sought to pierce the corporate veil, the Gouchers contended that the complaint insufficiently pleaded facts to hold them personally liable for the Mingo Defendants' debts.

{¶ 10} In his opposition, Hayes asserted that the Gouchers, as sole owners and partners of the Mingo Defendants, "should not be permitted to hide behind a corporate formation that consists of only themselves, given the egregious nature of breach of contract in this matter and their fraudulent attempt to sell real estate that they did not own or for which they lacked any title interest." In his motion, Hayes asserted additional factual allegations and attached documents to support his arguments — some of which were not included with this complaint.

{¶ 11} The trial court granted the Gouchers' motion to dismiss, finding that "presuming all factual allegations in the complaint as true and making all reasonable inferences in [Hayes's] favor, the court finds that [Hayes] can prove no set of facts entitling [him] to relief."

{¶ 12} This appeal followed.

## II. The Appeal

{¶ 13} In his sole assignment of error, Hayes contends that the trial court erred when it granted the Gouchers' motion to dismiss under Civ.R. 12(B)(6)

because he appropriately pleaded facts that entitled him to relief and he submitted evidence in support.

### A. Standard of Review

**{¶ 14}** An appellate court conducts a de novo review of a trial court's ruling on a Civ.R. 12(B)(6) motion to dismiss. *Perrysburg Twp. v. Rossford*, 2004-Ohio-4362, ¶ 5; *Hersh v. Grumer*, 2021-Ohio-2582, ¶ 5 (8th Dist.). Accordingly, we undertake an independent analysis without deference to the trial court's decision. *Hendrickson v. Haven Place, Inc.*, 2014-Ohio-3726, ¶ 12 (8th Dist.).

### B. Civ.R. 12(B)(6) Standard

**{¶ 15}** A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim tests the sufficiency of the complaint, *Antoon v. Cleveland Clinic Found.*, 2015-Ohio-421, ¶ 7 (8th Dist.), not the merits of a claim. *Filo v. Liberato*, 2013-Ohio-1014, ¶ 15 (7th Dist.).

**{¶ 16}** In deciding whether a complaint should be dismissed pursuant to Civ.R. 12(B)(6), "courts cannot rely on evidence or allegations outside the complaint to determine a Civ.R. 12(B)(6) motion." *Jefferson v. Bunting*, 2014-Ohio-3074, ¶ 11, citing *State ex rel. Fuqua v. Alexander*, 79 Ohio St.3d 206, 207 (1997); *Fast Tract Title Servs. v. Barry*, 2024-Ohio-5216, ¶ 24 (8th Dist.). Rather, we limit our review to the four corners of the complaint along with any documents properly attached to or incorporated into the complaint. *High St. Properties, L.L.C. v. Cleveland*, 2015-

Ohio-1451, ¶ 17 (8th Dist.), citing *Glazer v. Chase Home Fin., L.L.C.*, 2013-Ohio-5589, ¶ 38 (8th Dist.).

{¶ 17} The court accepts as true all the material factual allegations of the complaint and construes all reasonable inferences to be drawn from those facts in favor of the nonmoving party. *Fahnbulleh v. Strahan*, 73 Ohio St.3d 666, 667 (1995); *Brown v. Carlton Harley-Davidson, Inc.*, 2013-Ohio-4047, ¶ 12 (8th Dist.). To succeed on a Civ.R. 12(B)(6) motion, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling the plaintiff to relief. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus. If there is "'a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.'" *High St. Properties* at ¶ 16, quoting *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991).

### C. Analysis

{¶ 18} Hayes's complaint asserted a breach-of-contract claim against the Mingo Defendants. Hayes made no allegation that the Gouchers signed the contract in their personal capacities or that the lease agreement provided any personal guaranty. Accordingly, the Gouchers lacked privity with Hayes, and thus could not be held liable for the Mingo Defendants' debts under the breach-of-contract claim.

{¶ 19} Moreover, Ohio law provides that no personal liability attaches to the partners of a limited liability partnership for obligations arising "in contract, tort, or otherwise." R.C. 1776.36(C) states that

> [a]n obligation of a partnership incurred while the partnership is a limited liability partnership, whether arising in contract, tort or otherwise, is solely the obligation of the partnership. A partner is not personally liable, directly or indirectly, by way of contribution or otherwise, for such an obligation solely by reason of being or acting as a partner.

*See also Professional Sols. Ins. Co. v. Novak, L.L.P.*, 2020-Ohio-4829, ¶ 83 (8th Dist.).

{¶ 20} Hayes has not refuted that Ohio law shields the Gouchers from the Partnership's obligations under the Lease Agreement, but contends that he adequately pleaded facts in his complaint that would permit the trial court to pierce the partnership veil and impose individual liability against the Gouchers, as partners.

{¶ 21} The general rule is that corporations are distinct legal entities, and thus, shareholders, officers, and directors are not normally liable for the debts of the corporation. *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos. Inc.*, 67 Ohio St.3d 274, 287 (1993). The same is equally true for matters involving limited liability companies ("LLC") or limited liability partnerships ("LLP"). *See* R.C. 1706.26 and 1776.36(C) (both insulate a member or partner from the entity's sole "obligation arising out of contract, tort, or otherwise," and both prohibit personal

liability "for such an obligation solely by reason of being or acting as a" partner or member).

{¶ 22} Nevertheless, "in certain circumstances, the corporate form may be disregarded, and the corporate veil pierced, for the purpose of reaching the assets of the corporation's individual shareholders." *Minno v. Pro-Fab, Inc.*, 2009-Ohio-1247, ¶ 8. "Where a shareholder misuses the corporate form as a shield from liability for their own misdeeds, Ohio law will permit piercing of the corporate veil as a rare exception to the guiding principles of limited shareholder liability." *United States Bank Natl. Assn. v. MMCO, L.L.C.*, 2021-Ohio-4605, ¶ 58 (8th Dist.), citing *Dombroski v. Wellpoint, Inc.*, 2008-Ohio-4827, ¶ 17, 26. Courts have applied the concept of piercing the corporate veil to LLCs. *See Huttenbauer Land Co., L.L.C. v. Harley Riley, Ltd.*, 2012-Ohio-4585, ¶ 15 (1st Dist.). This court, however, is unable to locate any supporting authority where this concept has been applied to limited liability partnerships. Assuming, without deciding, that the veil of an LLP can be pierced, we find that Hayes's complaint failed to set forth sufficient facts that would provide a legitimate basis to pierce the Partnership's veil.

{¶ 23} In *Belvedere* and *Dombroski*, the Ohio Supreme Court held that the corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) the shareholder's control over the corporate entity is so complete that the corporation has no separate mind, will, or existence of its own; (2) the shareholders exercised control over the corporation in

such a manner to commit fraud, an illegal act, or a similarly unlawful act; and (3) that the plaintiff sustained injury or unjust loss as a result of the shareholder's control and wrongful conduct. *Belvedere* at paragraph three of the syllabus; *Dombrowski* at ¶ 18.

{¶ 24} In some instances, a complaint seeking to pierce the corporate veil, which recites the elements of the *Belvedere-Dombroski* test, may be sufficient to carry the plaintiff's pleading burden for purposes of a motion to dismiss. *Kurtz Bros. Inc. v. Ace Demo Inc.*, 2014-Ohio-5184, ¶ 28 (11th Dist.). Civ.R. 8(A) provides for fair notice pleading, which requires a "(1) short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." Nevertheless, to constitute fair notice, the complaint must still allege sufficient underlying facts that relate to and support the alleged claim and may not simply state legal conclusions. *Henderson v. Ohio*, 2015-Ohio-1742, ¶ 10 (8th Dist.). The complaint must contain either direct allegations on every material point necessary to sustain a recovery or contain allegations from which an inference may be fairly drawn that evidence on these material points will be introduced at trial. *Strahler v. Vessels*, 2012-Ohio-4170, ¶ 10 (4th Dist.).

{¶ 25} Hayes contends that his complaint alleged a legitimate basis for piercing the corporate veil to hold the Gouchers liable in their individual capacities as sole owners of Mingo LLC and partners of the Partnership. He maintains that

there was evidence in the trial court record that supported his allegations. But as previously discussed, when reviewing a Civ.R. 12(B)(6) motion to dismiss, the court is constrained to the four corners of the complaint and any properly incorporated attached documents to the complaint. Accordingly, although Hayes asserted additional factual allegations and produced subsequent documentation purportedly supporting his claim, that information is not proper for Civ.R. 12(B)(6) review.

{¶ 26} Our review of the complaint reveals that Hayes identified the Gouchers as owners of Mingo LLC and partners of the Partnership, but he made no allegation that the Gouchers exerted such control or dominance over the Mingo Defendants that it had no separate mind or will, or that the Gouchers used their control over the Mingo Defendants to commit fraud or an illegal act. Further, as discussed below, Hayes failed to make any allegation that he sustained injury or unjust loss, except for actual damages from the breach of contract, as a result of the Gouchers' control and wrongful conduct. Put simply, there are no allegations in the pleadings that support any of the elements set forth in *Belvedere-Dombroski*. Accordingly, Hayes failed to allege a legitimate basis for piercing the partnership veil to hold the Gouchers liable in their individual capacities.

{¶ 27} Moreover, the only allegation Hayes makes against the Gouchers individually that could justify personal liability involves the Gouchers purported intention to sell the property without legal authority. Hayes asserted that the Gouchers committed fraud or attempted to commit fraud with their actions (the

allegation Hayes's counsel made in his March 6, 2023 letter to the Partnership; exhibit No. 5 to the complaint); the complaint fails to plead fraud with particularity as required under Civ.R. 9. *See Barry*, 2022-Ohio-1943, at ¶ 12 (8th Dist.).[3]

**{¶ 28}** To comply with the Civ.R. 9(B) requirement, "'the pleading must contain allegations of fact which tend to show each and every element of a cause of action for fraud.'" *Parmatown S. Assn. v. Atlantis Realty Co.*, 2018-Ohio-2520, ¶ 7 (8th Dist.), quoting *Minaya v. NVR Inc.*, 2017-Ohio-9019, ¶ 11 (8th Dist.). "This means that a party must state 'the time, place, and content of the false representation, the fact misrepresented, and the nature of what was obtained or given as a consequence of the fraud.'" *Cord v. Victory Solutions, L.L.C.*, 2018-Ohio-590, ¶ 14 (8th Dist.), quoting *Carter Jones Lumber Co. v. Denune*, 132 Ohio App.3d 430, 433 (10th Dist. 1999).

**{¶ 29}** In this case, neither the complaint nor its attachments specify the time, place, and content of the alleged false representations, nor does it state what was obtained or given as a result of the alleged representations. In short, the complaint does not contain facts that, if true, would establish all the elements of a fraud claim.

---

[3] The elements of fraud are: (1) a representation of fact (or where there is a duty to disclose, concealment of a fact); (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or with utter disregard and recklessness as to whether it is true or false; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the misrepresentation (or concealment); and (6) resulting injury proximately caused by the reliance. *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 169 (1984).

**{¶ 30}** Moreover, the complaint does not allege any damages as a result of any alleged fraud or attempted fraud. The only damages sought are those for the breach of contract. To be certain, a review of Hayes's motion for default judgment against Gregory Goucher, individually, and his appellate brief, both assert that the damages sought derived from the breach of contract for nonpayment of rent, utilities, taxes, and repairs. Accordingly, the complaint fails to state a claim against the Gouchers, individually, for fraud or attempted fraud.

## III. Conclusion

**{¶ 31}** Based on the foregoing, we find that the trial court did not err in granting the Gouchers' Civ.R. 12(B)(6) motion to dismiss for failure to state a claim. The assignment of error is overruled.

**{¶ 32}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

MARY J. BOYLE, J., CONCURS;
ANITA LASTER MAYS, J., DISSENTS (WITH ATTACHED DISSENTING OPINION)

ANITA LASTER MAYS, J., DISSENTING:

**{¶ 33} ¶1}** I respectfully dissent from the majority's decision. For the following reasons, I would sustain Hayes's assignment of error and remand for further proceedings.

**{¶ 34}** In Hayes's sole assignment of error, he argues that the decision in *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos.*, 67 Ohio St.3d 274 (1993), as interpreted by *Dombroski v. WellPoint, Inc.*, 2008-Ohio-4827, demonstrates that he adequately pled facts against the Gouchers demonstrating that they are individually liable for the breach of the lease agreement and damages owed to Hayes. Because Mingo was a limited liability partnership, typically the Gouchers would not be liable as individuals for Mingo's debts.

**{¶ 35}** However, the Court in *Belvedere* stated that "[a]n exception to this rule was developed in equity to protect creditors of a corporation from shareholders who use the corporate entity for criminal or fraudulent purposes." *Id.* at 287. "Under this exception, the 'veil' of the corporation can be 'pierced' and individual shareholders held liable for corporate misdeeds when it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity." *Id.* "Courts will permit individual shareholder liability only if the shareholder is indistinguishable from or the 'alter ego' of the corporation itself." *Id.*

**{¶ 36}** In *Dombroski*, the Court held to fulfill the requirement of the *Belvedere* test for piercing the corporate veil, "the plaintiff must demonstrate that the defendant exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act." *Dombroski* at ¶ 29.

> A plaintiff seeking to recover under the doctrine of piercing the corporate veil is not required to demonstrate fraud in order to meet the second prong of the Beveldere-Dombroski test; a plaintiff can also demonstrate that the defendant committed "an illegal act or a similarly unlawful act."

*Fast Tract Title Servs. v. Barry*, 2022-Ohio-1943, ¶ 18 (8th Dist.), citing *Dombroski*, at syllabus.

**{¶ 37}** Hayes argues that the Gouchers committed an unlawful act when they tried or attempted to sell his property without his permission or the title of the property. Thus, they pierced the corporate veil and could be held liable for Mingo's debts including attorney fees in pursuit of this action, rent, utilities, taxes, and damages to the property they leased from Hayes. The Gouchers do not disagree with Hayes's assertions that they listed the property for sale. However, the Gouchers argue that the lease agreement gave Mingo the unqualified right to assign its rights under the agreement, including an option to purchase, without the need for any consent from Hayes.

**{¶ 38}** In response to the Gouchers' claims, Hayes argues that the option to purchase is not equivalent to the right to transfer title to the property. The lease agreement provides the option for Mingo to purchase the property from Hayes for

the amount of $150,000. However, the lease agreement does not give Mingo the option to sell the property to a third party. Gregory informed Hayes that he was going to list the property for sale, and Hayes replied that Gregory did not have the authority to list the property. However, the Gouchers listed the property anyway, and Hayes was notified by a realtor that the property was listed for sale after the realtor conducted a title search and discovered that the Gouchers did not own the property or have title to the property. Exhibit No. 5 attached to Hayes's complaint states that he advised the Gouchers "this real estate is not your property and, your attempts to sell it as such constitute fraud . . . ."

{¶ 39} Hayes and the Gouchers had a lease agreement with the option to purchase the property. "An option contract for the purchase of real property is an agreement wherein the legal titleholder of the property grants another person the privilege, without the obligation, to purchase the real property at a set price within a set time." *Judson v. Lyendecker*, 2013-Ohio-1060, ¶ 10 (10th Dist.), citing *Wolf v. Miller Diversified Consulting, LLC*, 2008-Ohio-1233, ¶ 22 (6th Dist.). "An option contract is neither a contract for the sale of real property nor a land installment contract." *Id.,* citing *Riverside Builders, Inc. v. Bowers*, 1990 Ohio App. LEXIS 2315 (10th Dist. June 7, 1990). "Until a lessee exercises the option to purchase, the lessee has no right of ownership, but only those rights which flow from the parties' lease agreement." *Id*. at ¶ 11, citing *Bowers*.

**{¶ 40}** Because Mingo did not have the right of ownership concerning the property, they did not have the right to list the property for sale, because they were not owners of the property. Nor did Hayes assign them the rights to list or sell the property per the complaint. The Gouchers are the sole owners of Mingo with absolute control, and as the sole owners, they attempted to sell a property they did not own, even though the owner told them they could not sell. These set of facts, that are consistent with Hayes's complaint, could allow Hayes to recover and demonstrate an entitlement to relief. "'As long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.'" *Katz v. Univ. Hosps. Health Sys.*, 2022-Ohio-3328, ¶ 13 (8th Dist.), quoting *Woods v. Sharkin*, 2022-Ohio-1949, ¶ 29, (8th Dist.). Allowing owners or shareholder to hide behind the corporate veil when openly attempting to commit illegal acts results in an injustice. "Additionally, a court may not dismiss a complaint under Civ.R. 12(B)(6) merely because it doubts the plaintiff will prevail." *Id.*, citing *id.*, citing *Bono v. McCutcheon*, 2005-Ohio-299, ¶ 8 (2d Dist.). For the stated reasons, I dissent from the majority and I would sustain the assignment of error.